Good morning. My name is Amy Gilbrow and I represent the plaintiff in this case, King Gardner. This is a social security case. Mr. Gardner alleges disability beginning September 20, 2001 due to back, foot, ankle, right leg, bilateral wrist, and bilateral knee pain. In his decision of April 30, 2004, the administrative law judge found that Mr. Gardner was not disabled because he was able to return to his past relevant work, excuse me, because he was able to perform work as a small products assembler, an electronics worker, and a marker. I didn't represent Mr. Gardner at the administrative hearing or the district court level, but I've assisted him in this appeal to the Ninth Circuit on two issues. First, whether the administrative law judge erred when he found the vocational expert testimony showed that an individual who cannot use his hands bilaterally for repetitive manipulation can work as an electronics worker, a small products assembler, or a marker. The second issue is whether the ALJ erred when he found Mr. Gardner's ankle impairment was not severe, and his reasoning was based solely on a June 2003 treatment note from a treating physician, Dr. Hollenbeck, which is in the excerpts at Site 270. Mr. Gardner requests that the court find the ALJ erred in these two respects. He may, in this case, for further proceedings for the ALJ to properly consider the medical evidence relating to Mr. Gardner's ankle and make a new determination at Step 2 and to make a new finding at Step 5. I think that in my briefs the Step 5 issue was made unnecessarily complex, and I'd like to present it. So where did the ALJ and the VE go wrong? Under TACF-EAPFL, ALJ has to use a VE to support his burden at Step 5. Here the ALJ called a VE because the record shows Mr. Gardner has limitations that preclude use of the guidelines. However, the ALJ didn't give the vocational expert a hypothetical question that was the same as his residual functional capacity assessment. In this case, the ALJ's ultimate residual functional capacity assessment related to the hands, which is what's relevant to the issues I'm describing, is that he should not use his hands repetitively for manipulation bilaterally. There were two hypotheticals that are two questions that the ALJ and the VE discussed at the hearing, and this is at the transcript at pages 350 to 354. The ALJ gave the vocational expert a general residual functional capacity that didn't include the problems with the use of the hands, and the VE identified these three jobs, small products assembler, electronics worker, and marker. Then the ALJ said, okay, assume there's a bilateral restriction that would keep him from doing constant repetitive manipulation. The VE said that in that case, all three of those jobs would be eliminated. Then the ALJ said, well, frequent would be okay, but not constant. Can you identify any jobs now? The vocational expert looked at the Dictionary of Occupational Titles and said that given that statement, Mr. Gardner could still work as an electronics worker and a marker, but not as an assembler. So those are the only two. That's the discussion that the ALJ had with the vocational expert regarding the individual's ability to work. And neither one of those solely states this is an individual who cannot use their hands for repetitive manipulation bilaterally. The only hypothetical given to the VE that talked about repetitive manipulation was the first one, when the VE said this person can't perform any of those jobs. And I submit in my briefs that these jobs are precluded for an individual who cannot use their hands repetitively. Do you see any difference between repetitive, frequent, or constant? Frequent and constant are defined terms in Social Security law. I do see a difference between repetitive, frequent, and constant. I think repetitive has to do with the number of repetitions that a person has to do. I actually think that the ALJ could have defined that term better in his decision or hypothetical to the vocational expert. I think that in some circumstances repetitive may mean frequent or constant. That could have been what the ALJ meant. But if repetitive means frequent, these jobs require – and then his hypothetical – or then his reasonable argument would have to be that this is an individual who cannot frequently use his hands, and that would preclude all three jobs, because as defined in the Dictionary of Occupational Titles, two of the jobs require frequent use of the hands, and one of the jobs requires constant use of the hands. So I think that – Does the Dictionary of Occupational Titles have a definition of frequent? Yes, it does. The Dictionary of Occupational Titles describes frequent and constant the same way that the Commissioner does. A job that requires frequent use of the hands requires use of the hands from one-third to two-thirds of the workday, and constant is what we usually think of. It requires the use of the hands all day. But why doesn't frequent comport with the finding that he couldn't do repetitive? Why isn't frequent good enough to match repetitive? Well, if frequent matches repetitive, then the ALJ found this person cannot repetitively use their hands, which would mean he can't frequently use his hands. So if those two terms are synonymous, then it's still vocational expert testimony. Maybe I put the question the wrong way. Why is it that if you can do it frequently, that doesn't match doing it repetitively? If you can't do it repetitively, but you can do it frequently, isn't repetitively less than frequently? I don't think so. It is repetitively. It's undefined. It's undefined. That term is not defined by the Commissioner. It's not defined in the Dictionary of Occupational Titles. And it wasn't defined by the administrative law judge in the hearing. However, when the ALJ asked the vocational expert whether an individual who is precluded from repetitive, to use his language, would keep him from doing constant repetitive manipulation. Constant repetitive. But he never asked him could he do it repetitively. No, he didn't. You're right. He didn't ask that question. And so that's why I think when the ALJ said the vocational expert testimony supports my finding at Step 5, that the individual can do these jobs, he was incorrect. And the vocational expert testimony does not support that. Now, do these particular job titles have a definition that would encompass any of these terms? These job titles each talk about the fact that they require the small parts assembler and the marker require frequent use of the hands, as they're described. I'm sorry, I think I just misspoke. The electronics worker and the marker require frequent use of hands for reaching, handling, and fingering. The small products assembler job requires constant use of the hands for reaching, handling, and fingering, which are the three terms used in the dictionary of occupational titles to describe the need for an individual to use their hands in any given job. I see I only have a couple minutes left. Is it your position that it was the use of the term repetitive that creates this confusion, that that should not have been used, but the ALJ should have used the terms frequent and or constant? I think if he had used those terms, those are terms that are defined and understood. And not used the term repetitive. I think the ALJ can use whatever terms he likes in the hypothetical, but I think that if he used the term repetitive, he probably needed to define it better for the vocational expert so everyone understood what he meant. Thank you. Good morning, Your Honor. Stephanie Martz. I'm here on behalf of the Commissioner. I would agree with Appellant's counsel that the issue on versus repetitive, frequent, constant is overly hyper-technical and hard to understand. I think it is the argument is being made in a vacuum and it is not reflective of the context of the ALJ's decision or his discussion with the vocational expert. The ALJ gave a hypothetical that didn't have any manipulative limitations in it. He then went back to the vocational expert and asked if any jobs could be performed if the person was precluded from constant repetitive manipulation, which the vocational expert testified all three jobs would be precluded. The ALJ went further and asked if there were any other jobs with this, and this is at the top of page 353, that would be consistent with this new added limitation. He then went on and said frequent would be okay, it's just not constant. Well, that doesn't sound like much of a question. That sounds like an answer. What it was was a clarification of the fact that constant and repetitive were equal terms in the ALJ's mind. Frequent was okay, but constant repetitive, i.e., constant repetitive being the same term, was not okay. Go ahead. As you can see, if you go back to what his RFC finding was, earlier in his decision he says, let's see, he also should not use his hands repetitively for manipulation bilaterally. Where is that reflected? Repetitively sounds less than frequently. If you can't use it repetitively, I would say, and to me, I'm no expert in this, but I would think that if you can't use it repetitively, you can't use it frequently. I believe that that's not how the ALJ was defining it. Well, then why shouldn't this go back? This shouldn't. It doesn't need to go back, because if you have to look at the record as a whole, and the new added limitation that the ALJ clarified was constant repetitive was a problem, but frequent was okay. And these two jobs that are left require only frequent handling, grasping, manipulation. So ideally the RFC finding would match identical with the vocational hypothetical. It doesn't. But when reading the ALJ's discussion with the ALJ in full context, the constant repetitive are synonymous terms how the ALJ was using it. But frequent was something different. It was something less than repetitive. Frequent, as defined vocationally under both the Dictionary of Occupational Titles and the Commissioner's Regulations would mean one-third to two-thirds of the day. Obviously, if you're doing it repetitively, you're doing it all day or constantly. You would be doing it all day. One-third to two-thirds is not all day. So frequent is something different. Repetitively, in ordinary English, I would think, means something like repeatedly. And repeatedly, I would think in the normal definition, is less than frequently. But maybe not. I mean, I don't know. It would be hard to say. If you do something repeatedly, like, say, lay instead of lie, that's something you may do repeatedly maybe three or four times during a ten-minute speech. It's not much different from frequently. But I certainly wouldn't say that repeatedly is substantially different from frequently. But I think the ALJ was clear that nonrepetitive, he was looking for something that was nonrepetitive. Frequent was okay. Nonrepetitive constant, i.e. Constant is all the time. It's not just repeatedly. Constant is without interruption. And that's what the ALJ was defining. That's not what repeatedly is. And I think that's how the ALJ was defining it. You've got to look, again, at the context of the hypothetical and the discussion with vocational expert when he clarified what constant repetitive meant with this new limitation was that frequent would be okay, just not constant, i.e. the constant and repetitive. Originally, that's not his finding. His finding earlier is repetitively. I don't know. I mean, it's all very arcane. But it certainly is quite ambiguous. Maybe it doesn't make any difference. But if we're going to rely on these terms, which have such slight differences, in one you're unable to work and in the next you are able to work, we at least have to get them clear and not use terms that are almost undefinable, at least in terms of the medical use that the expert's relying on. But that doesn't mean it's dispositive of the case. I think if we're going to rely on these nice medical distinctions to say you're entitled to the benefits or not, we at least have to get them clear. Maybe that's too much to ask. I don't know. I mean, I don't know how a non-doctor deals with these reports anyway. Well, I think the important context of this particular term is the vocational expert who has the ‑‑ I mean, there's vocational connotations to the term frequent versus constant, which is what the vocational expert was differentiating. While constant, frequent may not mean much to the ordinary person who doesn't work in vocational terms, they were something that the vocational expert understood the distinctions between. And in this case, there is a difference. And the vocational expert's testimony is consistent with the Dictionary of Occupational Titles. I guess what's not consistent is the finding of the ALJ, which is neither frequent nor constant, but repetitive. The nonrepetitive. He can do anything less than nonrepetitive, which is ‑‑ Less than repetitive. In other words, he can't do repetitive. More constant is how the ALJ ‑‑ He can do anything less than repetitive. Less than nonrepetitive. Does a job of a marker, does that require any repetitive work? Frequent. Only requires frequent work? Frequent. The marker and the electronics worker are frequent. The commissioner's consistent. What does a marker do, by the way? The marker, I've got that here. That's a marker is someone who marks and attaches price tickets to articles of merchandise. Sounds like they do something that's quite repetitive all day long. They're marking prices. But the question is, is it constant? Are you using your hands over and over to find the constant? The question is, is it repetitive? Or are you stopping in between tasks? The Dictionary of Occupational ‑‑ You think repetitive means you don't stop in between tasks? I believe how the ALJ was defining repetitive as constant. The Dictionary of Occupational Titles says this is not a constant. I think you've just proved that repetitive and constant are different terms. Well, I believe that constant, the way the ALJ was defining it, was constant and repetitive. His new added limitation was constant and repetitive was a problem. Frequent was okay. And these two jobs only require frequent. And that's consistent with the ALJ. We've got another issue in this case, which neither one of you has had time to discuss. Well, it's briefed, I guess, the ankle issue. The ankle issue is ‑‑ I'm glad we could move on to that, because just simply ‑‑ Well, we've got one minute. I've got one minute, and I'll try to make it fast. Minimal effect. And all the appellant has pointed to is one point in time when there was a visit to a doctor where he had some problems ambulating on the right. He still was able to ambulate independently. The only other abnormalities with the ankle ever noted were the inability to walk on his heel or toe. And the basic work activity here would be walking and standing. There was no indication that he had any significant limitations in those abilities. Well, the question really was whether there was a severe impairment. True. That is the question. And the medical evidence doesn't reflect that he had any limitations. The ankle he broke in 1990. And that's an excerpt of Record 124. The first point he ever even complained of anything was in, I believe, June of 2002. He was still able to walk. He had some trouble with toe and heel walking independently. So from 1990 to June 2002, there was nothing regarding his ankle pain. In August of 2002, again, there, at that point, he could heal and walk well. It doesn't show a significant limitation on basic work activities. Thank you. Thank you, counsel. You have just over a minute. I wanted to address very quickly the commissioner's last argument on ankle impairment, indicating that all I have pointed to is one point in time. First of all, the reason why we focused on that one point in time is looking at the administrative law judge's decision, where the only thing he cited in support of his statement that the ankle impairment was severe was one treatment note. And we pointed out that the ALJ either misread the treatment note or incorrectly attributed statements made in the treatment note to the ankle rather than to the back. And we covered that really carefully in our opening brief. In our opening brief also, we pointed out other points in time in which the ankle impairment had been raised. In June 2002, Dr. Hollenbeck, the same doctor whose treatment note we discussed, noted that Mr. Gardner had trouble with heel and toe walk at ER 194 to 95. He complained to pain in his ankle to another doctor. In June 2003, Dr. Hollenbeck noted that Mr. Gardner's ongoing gait problem was due to his ankle as a factor in his back pain. And so that shows that there are limitations related to the ankle, not just in that one treatment note. Thank you very much for your time. Thank you both very much. The case to start here will be submitted. Next case, U.S. v. Castillo has been submitted on the briefs. Next case for oral argument is Butler v. Alaska Pipeline Service Company at Howe. Counsel, this case is listed for 20 minutes of argument. These listings are based on a non-lawyer in the clerk's office looking at the size of the briefs. It doesn't seem to be that complicated a question. And so if you can do your arguments in a reasonable time, that would be helpful.
judges: Reinhardt, Paez, Strom